Dhiraj Chhaparwal, M.D.
207 Gibson Blvd#9, Clark, NJ 07066

Pro se Plaintiff

**FILED**

JUN 2 9 2007

**U.S DISTRICT COURT**
**MARTINSBURG, WV 25401**

| | |
|---|---|
| DHIRAJ CHHAPARWAL, M.D.,<br>                    Plaintiff,<br>     vs.<br><br>West Virginia University Hospitals, Inc., West Virginia College of Medicine and health Sciences center, University Health Associates, Bruce McClymonds, President and CEO, Norman Ferrari III, M.D., Martin Weisse, M.D., Mathew Brunner, M.D., Nancy Brunner, M.D., Kathleen Perkins, M.D., Jennifer Pumphrey, M.D., Jean Someshwar, M.D., Melissa Larzo, M.D., Megan Troischt, M.D., M.D., Heather Hixenbaugh, M.D., Michael Wolfe and JOHN/JANE DOES 1-X.<br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FEDERAL COURT
THE UNITED STATES OF AMERICA
MARTINSBURG, WV
LAW DIVISION

DOCKET NO.:  _1:07CV89_

**COMPLAINT**

Dhiraj Chhaparwal, M.D. ("Plaintiff"), by way of Complaint against West Virginia University Hospitals, Inc., West Virginia College of Medicine , West Virginia College of Medicine and health Sciences center, University Health Associates,Bruce McClymonds, President and CEO, Norman Ferrari III, M.D., Martin Weisse, M.D., Mathew Brunner, M.D., Nancy Brunner, M.D., Kathleen Perkins, M.D., Jennifer Pumphrey, M.D., Jean Someshwar, M.D., Melissa Larzo, M.D., Megan Troischt, M.D., Heather Hixenbaugh, M.D., Michael Wolfe, Pediatric Residency Coordinator and JOHN/JANE DOES 1-X (collectively "Defendants") hereby states:

## THE PARTIES

1.  Plaintiff, Dhiraj Chhaparwal, M.D., is a resident of the State of New Jersey.  He was employed under a contract as a PGY-2 pediatric resident by West Virginia University Hospital, Inc. between July 1, 2004 and June 30, 2005.

2.  Defendant West Virginia University Hospital, Inc. ("WVUH") is a health care consortium consisting of multiple hospitals in northern West Virginia including the behavioral health center Chestnut Ridge Hospital, City Hospital, Jefferson Memorial Hospital, Mary Babb Randolph Cancer Center, Jon Michael Moore Trauma Center, Ruby Memorial Hospital, and the West Virginia University Children's Hospital.

3.  Upon information and belief, Bruce McClymonds, President and CEO, is a resident of the State of West Virginia. At all relevant times, he was and is the President and Chief Executive Officer of West Virginia University Hospital, Inc. He is sued in his individual and official capacity.

4.  Upon information and belief, Norman D. Ferrari, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Ferrari was and is the Chairman of Pediatric Residency Program, Designated Institutional Officer at WVUH and Associate Dean at West Virginia College of Medicine. He is sued in his individual and official capacity.

5.  Upon information and belief, Martin E. Weisse, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Weisse was and is the Director of Pediatric Residency Program at WVUH. He is sued in his individual and official capacity.

6.  Upon information and belief, Mathew Brunner, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Brunner was and is the Director of Combined Internal Medicine-Pediatric Residency Program at WVUH, Associate Director of Pediatric Residency Program at WVUH and was Interim Director of Pediatric Residency Program at WVUH. He is sued in his individual and official capacity.

7.  Upon information and belief, Kathleen Perkins, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Perkins was and is the Faculty of Pediatric Residency Program at WVUH. She is sued in her individual and official capacity.

8.  Upon information and belief, Nancy Brunner, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Brunner was and is the Faculty of Pediatric Residency Program at WVUH. She is sued in her individual and official capacity.

9.  Upon information and belief, Jennifer Pumphrey, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Pumphrey was and is the Faculty of Pediatric Residency Program at WVUH. She is sued in her individual and official capacity.

10. Upon information and belief, Kathleen Perkins, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Perkins was and is the Faculty of Pediatric Residency Program at WVUH. She is sued in her individual and official capacity.

11. Upon information and belief, Melissa Larzo, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Larzo was and is the Faculty of Pediatric Residency Program at WVUH. She is sued in her individual and official capacity.

12. Upon information and belief, Jean Someshwar, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Someshwar was and is the Faculty of Pediatric Residency Program at WVUH. She is sued in her individual and official capacity.

13. Upon information and belief, Megan Troischt, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Troischt was and is the Faculty of Pediatric Residency Program at WVUH. She is sued in her individual and official capacity.

14. Upon information and belief, Heather Hixenbaugh, M.D., is a resident of the State of West Virginia. At all relevant times, Dr. Hixenbaugh was Chief Resident of Pediatrics at WVUH and is the Faculty of Pediatric Residency Program at WVUH. She is sued in her individual and official capacity.

15. Upon information and belief, Michael Wolfe, is a resident of the State of West Virginia.  At all relevant times, Mr. Wolfe was and is the Education Coordinator of Pediatric Residency Program at WVUH.  He is sued in his individual and official capacity.

## FACTS

16. On July 1, 2004, Plaintiff began his PL-2 residency with West Virginia University Hospital School of Medicine. {Exhibit A}

17. At all relevant times, the WVUH Pediatric Program was and is an approved residency program, as defined by the Accreditation Council for Graduate Medical Education (ACGME) in the current "Essentials of Accredited Residencies in Graduate Medical Education." {Exhibit B}

18. As a Sponsoring Institution accredited by the ACGME, WVUH must be in substantial compliance with the Institutional Requirements promulgated by the ACGME. {Exhibit C}

19. As a Sponsoring Institution accredited by the ACGME, WVUH must also be in compliance with the Program Requirements for Residency Education in Pediatrics, as promulgated by the ACGME. {Exhibit D}

20. Throughout Plaintiff's Pediatric Residency training at WVUH beginning July 2004, Plaintiff attended scheduled one half-day session per week of Continuity clinic [PACC] at Pediatric Residency program of WVUH at University Health Associates [UHA] Unit. The faculties in this clinic included Dr. Mathew Brunner, M.D., Dr. Nancy Brunner, M.D., Dr. Jennifer Pumphrey, M.D., Dr. Melissa Larzo, M.D., Dr. Megan Troischt, M.D., Dr. Norman Ferrari III, M.D., Dr. S. Nanda, M.D. and Chief Resident Dr. Heather Hixenbaugh, M.D. This group along with other faculties including of Pediatric cardiology and Adolescent Pediatrics Faculty Dr. Kathleen Perkins and some residents including Andrea Greenfield, M.D., Cindy Clark, M.D. and Jeff Lancaster, M.D. were noted taking substance of abuse during work hours at WVUH, in addition to nurses and Nurse Practitioner of Department of Pediatrics at WVUH including Nurse practitioner Ms. Michelle Michael. Faculty Dr. Melissa Larzo, M.D. and Dr. Heather Hixenbaugh, M.D., were also members of Resident evaluation and promotion committee of WVUH Pediatric Residency program. {Exhibit E}

21. Many faculties of Pediatric department at WVUH including Dr. Martin Weisse, M.D., were noted making serious patient care neglects including in Pediatric Wards, Intensive Care Units and Continuity clinic of Pediatric department at WVUH. Some of their patients suffered serious detrimental complications. On top, these faculties have tried to cover up those patient care neglects. These faculties including Dr. Martin Weisse, M.D., be responsible for mortality among these patients including in future. Serious violations of ACGME requirements by Pediatric Residency program at WVUH were noted including insufficient patient volume.

22. On January 1, 2005, Plaintiff began his one month-long rotation in the scheduled Block rotation in continuity clinic at PACC of Pediatric Residency program. The faculties in this clinic included Dr. Mathew Brunner, M.D., Dr. Nancy Brunner, M.D., Dr. Jennifer Pumphrey, M.D., Dr. Melissa Larzo, M.D., Dr. Megan Troischt, M.D., Dr. Norman Ferrari III, M.D., Chief Resident Dr. Heather Hixenbaugh, M.D. Plaintiff already reported to Pediatric Program Director Dr. Martin E. Weisse at WVUH regarding these faculty's harassment and discrimination against Plaintiff, poor quality of residency training, mishandling of patient medications and taking substance of abuse during work hours. {Exhibit G}

23. As per ACGME Program Requirements under 'Continuity Experience' states- *"Inherent in the principle of continuity of care is that patients are seen on a regular and continuing basis. Isolated block experiences alone will not satisfy this requirement"*. Contrary to ACGME requirement, Pediatric Residency Program at the West Virginia University School of Medicine scheduled isolated block rotation in January 2005 for Plaintiff in continuity clinic at PACC of Pediatric Residency program. {Exhibit H}

24. On January 5, 2005, Plaintiff reported in a written complaint to Pediatric Program Director Dr. Martin E. Weisse at WVU [Program Director/WVU] hospital regarding Serious patient care neglects by faculties, harassment and discrimination against Plaintiff, poor quality of residency training, staff/faculty mishandling patient medications and Staff and faculty of Pediatric Department [including Physicians] taking substance of abuse during work hours. Plaintiff was advised by Pediatric Residency program to join and fit well in this group of Faculty and staff who were mishandling patient medications and taking substance of abuse during work hours. However, Plaintiff opposed such unethical and unprofessional practices by those specific staff and faculties that could be detrimental to themselves, mankind and patient care. Plaintiff, as a resident, in good faith also professionally suggested improvement strategies for the best interest of patient care and residency training. {Exhibit I}

25. Plaintiff completed his work conscientiously during his rotation in PACC in January 2005 and his competency was approved as evident in his patient notes where faculties agreed with his patient care and competencies. {Exhibit J}

26. On February 4, 2005, Plaintiff reiterated his request and reported in a written complaint to Pediatric Program Director Dr. Martin E. Weisse at WVUH regarding Serious patient care neglects by faculties, harassment and discrimination against him with a direct warning of me complaining to outside agencies, poor quality of residency training, staff and faculty mishandling patient medications and taking substance of abuse

during work hours at WVUH. Plaintiff, as a resident, in good faith also suggested improvement strategies for the best interest of patient care and residency training. Plaintiff also included faculty assessment performed by him and details of patient care neglects by Faculties including Pediatric Program Director Dr. Martin E. Weisse. Again, Plaintiff was advised by Pediatric Residency program to join and fit well in this group of Faculty and staff who were mishandling patient medications and taking substance of abuse during work hours with them. However, Plaintiff opposed such unethical and unprofessional practices by those specific staff and faculties that could be detrimental to them, mankind and patient care. Substances of abuse cause Psychiatric, physical and behavioral problems among substance abusing faculty and staff including but not limited to causing disorientation, memory changes, hallucinations, Paranoid delusions, physical and psychiatric problems. Abusing substance of abuse could not only be extremely dangerous to these substance abusing staff and Faculties causing mental and health problems in them but also to their patients and environment. Plaintiff in good faith advised of getting frequent at random drug screening of all the staff and faculty of WVUH Pediatric Residency program, including of defendants, by atleast two different credible Out-of-state health care agencies for the best interest of patient care, resident education and learning environment. Plaintiff, as a resident, in good faith suggested improvement strategies for the best interest of patient care and residency training. {Exhibit K}

27. In retaliation to Plaintiff's written conscientious concerns, Program Director of Pediatric program- Dr. M. Weisse, a member of Resident evaluation and promotion committee of Pediatric Residency program, informed Plaintiff of Nonrenewal of Plaintiff's agreement of appointment when it expire on June 30, 2005. Resident evaluation and promotion committee of Pediatric Residency program consisted of members including Dr. Melissa Larzo, M.D., Dr. Heather Hixenbaugh, M.D., Dr. M. Weisse, M.D., Dr. Panitan Yossuck, M.D., and Mr. Michael Wolfe, Pediatric Residency Program Coordinator at WVUH. Out of these members, Dr. Melissa Larzo, M.D., Dr. Heather Hixenbaugh, M.D., Faculty of Pediatric Cardiology and Mr. Michael Wolfe were complained of taking substance of abuse during work hours. {Exhibit L}

28. ACGME Institutional requirements state as- "e. Conditions for reappointment - 1.Nonrenewal of agreement of appointment: Residents must be allowed to implement the institution's grievance procedures as addressed below if they have received a written notice of intent not to renew their agreements; f. Grievance procedures and due process: The Sponsoring Institution must provide residents with fair and reasonable written institutional policies on and procedures for grievance and due process". {Exhibit M}

29. In spite of Plaintiff requesting multiple times by all means including letters, fax, and personally, WVUH (including Dr. M. Weisse and DIO Dr. Norman Ferrari III) denied Plaintiff of institutional Grievance procedures and due process including access. {Exhibit N}

30. Plaintiff was threatened by the WVUH and its Pediatric residency Program in many different ways, including a threat to not to reach and speak out the truth to ACGME, not to opt for due process and grievance or inform any other body, and further threatened to spoil his career. {Exhibit O}

31. Further in retaliation, WVU Pediatric residency Program unfairly changed Plaintiff' rotations to spoil his career and training; unfairly denied Plaintiff' vacation leave; unfairly denied Plaintiff's salary for evening clinic and education funds; inappropriately suspended Plaintiff' resident meal card; did favoritism for local incompetent WV residents; unfairly promoted local WV PL-1 resident [who had no waiver from American Board of Pediatrics] to supervising PL-2 level for couple of rotations in the middle of that resident's PL-1 year, treating other residents differently. {Exhibit P}

32. Beginning March 2005, Plaintiff began applying to other pediatric residency programs.

33. On March 15, 2005, Dr. Panitan Yossuck, M.D., Assistant Professor, WVU School of Medicine, Division of Neonatal- Perinatal Medicine recognizing Plaintiff's abilities wrote a letter of recommendation for him to apply in another residency program. Dr. Yossuck was a member of Pediatric Residency Education Committee of WVUH [/Resident evaluation and promotion committee of Pediatric Residency program of WVUH]. {Exhibit R}

34. On May 19, 2005, Plaintiff e-mailed Dr. Alan J. Meltzer, Director of the Pediatric Residency Training Program, Atlantic Health System (AHS), NJ of his interest in its PL-2 program. {Exhibit S}

35. On May 20, 2005 at 12:04 p.m., Dr. Meltzer responded to Plaintiff's e-mail and asked him to call his office for an interview and to provide contact information for himself and his references from his current program. {Exhibit T}

36. On May 31, 2005, Dr. Meltzer confirmed, via e-mail, the interview for June 1, 2005, at 9:00 am.

37. Sometime during the week of May 30, 2005, Dr. Meltzer spoke with Dr. Weisse, of West Virginia School of Medicine, regarding Plaintiff.  Upon information and belief, Drs. Weisse and Meltzer discussed the Plaintiff and his qualifications for the pediatric residency at AHS. {Exhibit V}

38. As per ACGME program requirements- *"A Program Director is required to provide verification of residency education for residents who may leave the program prior to completion of their education."*

39. By letter dated June 6, 2005, Dr. Weisse memorialized his earlier conversation with Dr. Meltzer. Dr. Weisse confirmed that Plaintiff "served as a pediatric resident in our program from July 2004 through June 2005" and that Plaintiff "will be presented with a certificate of completion for his time here later this month." In addition, Dr. Weisse stated that Plaintiff "has my permission to seek a residency position elsewhere. I believe that he has the skills, knowledge and determination to become a good pediatrician, and trust that he will do so. I wish him all the best." {Exhibit X}

40. Dr. Weisse is and was Program Director of Pediatric Residency Program at WVUH and also a member of WVUH Pediatric Residency Education Committee [also WVUH Pediatric Residency Promotion and evaluation Committee]. {Exhibit Y}

41. On June 1, 2005, Plaintiff interviewed with Dr. Meltzer and signed the AHS Hospital Corp.– Morristown Memorial/Overlook Hospital Campus Resident Staff Agreement for PGY-2 position in Pediatrics.

42. Dr. Meltzer had received information regarding Plaintiff's performance evaluation when he communicated with Dr. Weisse, Program Director of the WVUH Pediatric Residency Program, during the week of May 30, 2005 and the follow-up letter from Dr. Weisse on June 6, 2005. {Exhibit AA}

43. ACGME requirements state- "The performance of the faculty must be evaluated by the program no less frequently than at the midpoint of the accreditation cycle, and again prior to the next site visit. The evaluations should include a review of their teaching abilities, commitment to the educational program, clinical knowledge, and scholarly activities. This evaluation must include annual written confidential evaluations by residents." Plaintiff provided Dr. Weisse with the requested annual written evaluations of various faculties of WVUH Pediatric Residency program at the same time when Dr. Weisse provided Plaintiff his letter dated June 6, 2005. {Exhibit BB}

44. On June 9, 2005, Plaintiff requested in a letter to Dr. Martin E. Weisse, Director of the Pediatric Residency Program at the West Virginia University School of Medicine regarding Plaintiff had not seen his American Board of Pediatrics-Annual Resident In-Training Evaluation [RT8 form]. {ExhibitCC}

45. On June 16, 2007, Plaintiff again requested in a letter to Dr. Martin E. Weisse, Director of the Pediatric Residency Program at the West Virginia University School of Medicine including regarding Plaintiff had not seen his American Board of Pediatrics- Annual Resident In-Training Evaluation [RT8 form], nonpayment of evening clinic work and his educational funds; and again expressed his concerns regarding staff and faculty mishandling patient medications and taking substance of abuse during work hours. Plaintiff again

reiterated as Substances of abuse cause Psychiatric, physical and behavioral problems among substance abusing faculty and staff including but not limited to causing disorientation, memory changes, hallucinations, Paranoid delusions, physical and psychiatric problems. Abusing substance of abuse could not only be extremely dangerous to these substance abusing staff and Faculties causing mental and health problems in them but also to their patients and environment. Plaintiff in good faith again advised of getting frequent at random drug screening of all the staff and faculty of WVUH Pediatric Residency program, including of defendants, by at least two different credible Out-of-state health care agencies for the best interest of patient care, resident education and learning environment. Plaintiff, as a resident, in good faith suggested improvement strategies for the best interest of patient care and residency training. {Exhibit DD}

46. On June 27, 2007, Plaintiff reiterated his request in a letter to Dr. Martin E. Weisse, Director of the Pediatric Residency Program at the West Virginia University School of Medicine including regarding Plaintiff not seen his American Board of Pediatrics- Annual Resident In-Training Evaluation [RT8 form], nonpayment of evening clinic work and his educational funds; and again expressed his concerns regarding staff and faculty mishandling patient medications and taking substance of abuse during work hours. Plaintiff requested the reasons for not performing at random drug screening of all the staff and faculty of WVUH Pediatric Residency program, including of defendants, by at least two different credible Out-of-state health care agencies because abusing substance of abuse could not only be extremely dangerous to these substance abusing staff and Faculties causing mental and health problems in them but also to their patients and environment. {Exhibit EE}

47. On July 10, 2005, Plaintiff emailed Dr. Martin E. Weisse, Director of the Pediatric Residency Program at the West Virginia University School of Medicine stating as- " I very much respect your opinion as a Program Director during our last conversation that you would be giving me full 12 month satisfactory credit for my resident training under your leadership...I am looking forward to receive from you the certificate for satisfactory completion of full 12 months of Residency training under your leadership." As of July 10, 2005, Plaintiff wanted to see and sign on his American Board of Pediatrics- Annual Resident In-Training Evaluation [RT8 form] that he had not seen so far. {Exhibit FF}

48. On June 27, 2007, Michael G. Wolfe, Pediatric Education Coordinator, Pediatric Residency Education Committee, Department of Pediatrics at WVUH acknowledged confirming the above said letters in possession of WVUH department of Pediatrics. {Exhibit GG}

49. On June 14, 2005, Dr. Joanne Conroy, Executive Vice-President of AHS, NJ signed the Resident Staff Agreement, making Plaintiff's PGY-2 Resident Staff Agreement with Atlantic Health System, NJ, a fully executed contract. {ExhibitHH}

50. As a result of Plaintiff having received a copy of the fully executed Agreement, he began making arrangements to relocate himself and his family, at great expense, to New Jersey. {Exhibit II}

51. Plaintiff successfully completed the mandatory Pediatric Advanced Life Support (PALS) course held at Pediatric Residency Program, Atlantic Health System, Morristown, NJ on June 21, 2005, and was later awarded with the certificate of completion. {Exhibit JJ}

52. On July 1, 2005, Plaintiff began his first day in the PGY-2 Pediatric Residency program at Pediatric Residency Program, Atlantic Health System, Morristown, NJ. {Exhibit KK}

53. On August 2, 2005, Michael G. Wolfe, Pediatric Education Coordinator, Pediatric Residency Education Committee, Department of Pediatrics at WVUH sent a letter via fax to Dr. Alan Meltzer, M.D., Pediatric Residency Program Director, Atlantic Health System, Morristown, NJ, that stated as –" Below you will find the months and rotations Dhiraj Chhaparwal, MD, participated in at our institution from July 1, 2004 to June 30, 2005. It was decided by the Pediatric Residency Education Committee, that Dr. Chhaparwal would receive credit of ten out of twelve months during 2004-2005 year." The letter contained incorrect information regarding Plaintiff's two rotations in Pediatric Residency program at WVUH. However, the letter showed Plaintiff failing both his Continuity Clinic [PACC] rotation in January 2005 and Adolescent rotation in February 2005. Dr. Martin Weisse was and is a member of Pediatric Residency Education Committee at WVUH. {Exhibit LL}

54. On August 9, 2005, Dr. Kaye, Medical Director, DIO, Division of Academic Affairs, Atlantic Health System, Morristown, NJ showed Plaintiff the letter dated August 2, 2005 of Michael G. Wolfe, Pediatric Education Coordinator, Pediatric Residency Education Committee, Department of Pediatrics at WVUH and accused Plaintiff of not honoring the AHS Resident Staff Agreement regarding credits and in addition, Plaintiff was advised that he would not be allowed to return to work. {Exhibit MM}

55. On August 11, 2005, Dr. Meltzer replied to Plaintiff and stated that his employment contract was invalid and that he needed to look for a new residency program. {ExhibitNN}

56. By letter dated August 19, 2005, Cynthia N. Hoen, Assistant General Counsel, Atlantic Health System [AHS], NJ advised Plaintiff that his contract was terminated because it was misrepresented to AHS that he had successfully completed a 12-month PGY-1 program at his prior place of employment and that he was

"well aware" that completion of that 12-month program was a prerequisite for application to and acceptance in its residency program. Ms. Hoen further stated that when it was "discovered" that Plaintiff had not met AHS' admission criteria, the contract was terminated back to its inception. {Exhibit OO}

57. The termination of Plaintiff's Resident Staff Agreement significantly threatened his career development. {Exhibit PP}

58. On August 14, 2005, Plaintiff filed a claim for unemployment benefits with the State of New Jersey Department of Labor and Workforce Development. {Exhibit QQ}

59. On October 28, 2005, the Appeal Tribunal issued its decision, finding that Plaintiff did not misrepresent his qualifications for the job and there was no evidence of misconduct on the part of Plaintiff, and, therefore, he was not disqualified from receiving unemployment benefits. {Exhibit RR}

60. A further act of retaliation on the part of WVUH was the information provided by Dr. Martin E. Weisse, M.D., Program Director and Dr. Norman D. Ferrari, Department Chair, Pediatric Residency Program, WVUH in American Board of Pediatrics-Annual Resident In-Training Evaluation [RT8 form] of Plaintiff stating in 'other remarks' area as " Dr. Chhaparwal had difficulties fitting in to our program. He allonated some of the faculty early on which made it a difficult teaching & learning environment + our promotion and evaluation committee determined that he gets 10 months of credit". Martin E. Weisse, M.D., Program Director, Pediatric Residency Program, WVUH, was a member of WVUH Pediatric residency promotion and evaluation committee.

61. On November 29, 2005, Ms. Michelle Michael, University Health Associates Nurse Practitioner assigned to work in the Pediatric Intensive Care Unit of WVUH department of Pediatrics at Ruby Memorial Hospital, Morgantown, WV, killed her husband using Nondepolarizing Neuromuscular blocking paralytic drug stolen from WVUH department of Pediatrics. This incidence took place almost 5 months after Plaintiff left Morgantown, WV. {Exhibit TT}

62. Pediatric Residency Program, WVUH was informed beforehand by Plaintiff, including in letters dated January 5, 2005 and February 4, 2005 to Pediatric Program Director Dr. Martin E. Weisse at WVUH, regarding Faculties and staff including Ms. Michelle Michael, mishandling patient medications and taking substance of abuse during work hours. However, Plaintiff was advised by WVUH Pediatric Residency program to join and fit well in this group of Faculty and staff who were mishandling patient medications and taking substance of abuse during work hours. However, Plaintiff opposed such unethical and unprofessional practices by those specific staff and faculties that were also not good for teaching and learning environment. {ExhibitUU}

63. As per ABP under ' Resident and fellow evaluation'- "Applicants who wish to appeal evaluations or final recommendations must proceed through institutional due process mechanisms." However, WVUH refused to provide ~~he~~ PLAINTIFF with a due process when ~~he~~ HE appealed ~~his~~ HIS unfair evaluations, including during ~~his~~ HIS January 2005 and February 2005 rotations, from Pediatric Residency Program, WVUH. {Exhibit VV}

64. WVUH, with its motive of retaliation, are still defaming Plaintiff in his attempt to complete his residency training and achieve certification to practice Pediatrics/ Pediatric Subspecialties. {Exhibit WW}

65. On January 27, 2005, Plaintiff informed Chief Resident Dr. Hixenbaugh and Pediatric residency Coordinator Mr. Wolfe by an email regarding Plaintiff's sick leave. {Exhibit XX}

66. On February 1, 2005, Plaintiff begun his one month long resident rotation in Pediatric Adolescent clinic at WVUH where Dr. Kathleen Perkins was Supervising faculty. Student Health unit was associated with Adolescent clinic of WVUH. Dr. Perkins informed Plaintiff to notify chief resident and /or Pediatric residency Coordinator Mr. Wolfe whenever Plaintiff is on leave or not there. {Exhibit YY}

67. On February 1, 2005, Pediatric residency Coordinator Mr. Wolfe forwarded an email to Plaintiff informing repairs going on for new telephone system and overhead paging system in WVUH during February 2005. {Exhibit ZZ}

68. On February 8, 2005, Plaintiff informed Pediatric residency Coordinator Mr. Wolfe via email that he would be able to make it to the hospital in afternoon, as there were unavoidable circumstances. Plaintiff had enough vacation leave remaining then. {Exhibit AAA}

69. On February 8, 2005, Plaintiff informed Pediatric residency Coordinator Mr. Wolfe via email that his pager is showing Lo cell and requested correction regarding pager. {Exhibit BBB}

70. On February 9, 2005, Plaintiff informed Chief Resident Dr. Hixenbaugh and Pediatric residency Coordinator Mr. Wolfe by an email regarding his leave on February 10 and 11, 2005. {Exhibit CCC}

71. On February 16, 2005, Plaintiff informed Dr. Perkins, supervising faculty of Adolescent rotation regarding him working on self-education clinical information pertaining to Pediatric Adolescent clinic. Plaintiff was self-educating with American Board clinical items, as Dr. Perkins, supervising faculty of Adolescent rotation, was not at all demonstrating interest in the education of residents. Her behavior and approach was not normal. {Exhibit DDD}

72. On February 14, 2005, Plaintiff informed Chief Resident Dr. Hixenbaugh and Pediatric residency Coordinator Mr. Wolfe by an email regarding Dr. Perkins not receiving Plaintiffs'communication with them for

leave. Plaintiff was referred to email dated February 1, 2005 of Pediatric residency Coordinator Mr. Wolfe regarding repairs going on for new telephone system and overhead paging system in WVUH during February 2005. {Exhibit EEE}

73. On February 18, 2005, Plaintiff informed Dr. Perkins, M.D., supervising faculty of Adolescent rotation, Chief Resident Dr. Hixenbaugh, M.D., Ms. Theresa of Student health and Pediatric residency Coordinator Mr. Wolfe by an email regarding his sick leave for February 18, 2005. {Exhibit FFF}

74. On February 18, 2005, Plaintiff informed Dr. Perkins, M.D., supervising faculty of Adolescent rotation, and Ms. Melcalf of Student health requesting to not to schedule any patient for him that day as he was on sick leave. {Exhibit GGG}

75. On February 20, 2005, Plaintiff informed Chief Resident Dr. Hixenbaugh , Dr. Perkins , M.D., and Pediatric residency Coordinator Mr. Wolfe by an email regarding his leave on February 21, 2005. {Exhibit HHH}

76. On February 20, 2005, Plaintiff informed Dr. Perkins, M.D. and Ms. Theresa of Student health requesting to not to schedule any patient for him that day as he was on sick leave. {Exhibit III}

77. Throughout his rotation in Adolescent clinic during February 2005, Plaintiff followed instructions of Supervisors Dr. Perkins and completed his patient care as instructed. That is evident from the patient notes of Pediatric Adolescent clinic. {Exhibit JJJ}

78. During the last week of February 2005, Dr. Perkins, M.D. took Plaintiff's test pertaining to Adolescent rotation and commented as "EXCELLENT" performance of Plaintiff on test papers. {Exhibit KKK}

79. During the last week of February 2005, Faculty at Student health division of Adolescent clinic at WVUH gave positive feedback to plaintiff regarding his performance. {Exhibit LLL}

80. In an email dated March 1, 2005, Plaintiff thanked Dr. Perkins for informing Plaintiff's performance excellent in the test. {Exhibit MMM}

81. In her evaluation note for Plaintiff's Adolescent rotation, Faculty Dr. Perkins, M.D. wrote as- " I told D. that on 2/10 I was giving a lecture in Student health at 8:30 AM. He said that he wanted to go to my lecture rather then Thurs check-in rounds. He did not attend lecture. Thursday afternoon I have a special Prevent clinic, D. never appeared or notified me." The reality was-there was never such an incidence because Plaintiff informed Pediatric Residency Program at WVUH on February 9, 2005 by an email regarding his leave on February 10 and 11, 2005. Plaintiff was on leave on 2/10. {Exhibit NNN}

82. Further in her evaluation note for Plaintiff's Adolescent rotation, Faculty Dr. Perkins, M.D. wrote as- " Friday 2/11 D. was scheduled to be in Student health. He did not appear or notify anyone. This is very bad for our department. I am telling Student Health not to assign DC patients... he has failed to demonstrate professionalism in basic requirements of this rotation" However, the reality was -On February 9, 2005, Plaintiff notified Chief Resident Dr. Hixenbaugh and Pediatric residency Coordinator Mr. Wolfe by an email regarding his leave on February 10 and 11, 2005. Plaintiff was on leave on Friday 2/11 informing well beforehand to the Pediatric Residency program. Dr. Perkins seemed to be not within normality with her paranoia, disorientation and memory loss. {Exhibit OOO}

83. Throughout Plaintiff's rotation in Adolescent Pediatrics during February 2005, the staff working at Adolescent medicine in February 2005 praised Plaintiff's good Professionalism. {Exhibit PPP}

84. On multiple occasions including in letters dated January 4, 2005 and February 5, 2005, Plaintiff informed WVUH Pediatric Program Director Dr. Martin E. Weisse regarding staff and faculty including Dr. Perkins, M.D. taking substance of abuse during work hours. Substances of abuse cause Psychiatric, physical and behavioral problems among substance abusing faculty and staff including but not limited to causing disorientation, memory changes, hallucinations and Paranoid delusions and thereby leading to 'impaired Physician'. Abusing drugs could not only be extremely dangerous to these substance abusing staff and Faculties causing mental and health problems in them but also to their patients and environment. Plaintiff in good faith advised of getting frequent at random drug screening of all the staff and faculty of WVUH Pediatric Residency program, including of Dr. Kathleen Perkins, M.D., by two different credible Out-of-state health care agencies for the best interest of patient care, resident education and learning environment. However, WVUH failed with unknown reasons, endangering patient care and resident. {Exhibit QQQ}

85. On January 1, 2005, Plaintiff began his one month-long rotation in the scheduled Block rotation in continuity clinic at PACC of Pediatric Residency program. {Exhibit RRR}

86. As per ACGME Program Requirements under 'Continuity Experience' states- "*Inherent in the principle of continuity of care is that patients are seen on a regular and continuing basis. Isolated block experiences alone will not satisfy this requirement*". Contrary to ACGME requirement, Pediatric Residency Program at the West Virginia University School of Medicine scheduled isolated block rotation in January 2005 for Plaintiff in continuity clinic at PACC of Pediatric Residency program. {Exhibit SSS}

87. Many faculties of Pediatric department at WVUH including of Continuity clinic, Pediatric Wards and Dr. Martin Weisse, M.D., were noted making serious patient care neglects at WVUH. Some of their patients suffered serious detrimental complications. {Exhibit TTT}

88. Serious violations of ACGME requirements by Pediatric Residency program at WVUH were noted including insufficient patient volume at Continuity clinic and isolated block rotation in continuity clinic. {Exhibit UUU}

89. Throughout Plaintiff's Pediatric Residency training at WVUH beginning July 2004, Plaintiff attended scheduled one half-day session per week of Continuity clinic [PACC] at Pediatric Residency program of WVUH at University Health Associates [UHA] Unit where the faculties of Continuity clinic including Dr. Mathew Brunner, M.D., Dr. Nancy Brunner, M.D., Dr. Jennifer Pumphrey, M.D., Dr. Melissa Larzo, M.D., Dr. Megan Troischt, M.D., Dr. Norman Ferrari III, M.D., and Chief Resident Dr. Heather Hixenbaugh, M.D. along with other faculties including of Pediatric cardiology and Adolescent Pediatrics Faculty Dr. Kathleen Perkins and some residents including Andrea Greenfield, M.D., Cindy Clark, M.D. and Jeff Lancaster, M.D., in addition to Mr. Wolfe, Staff of Pediatrics and Nurse Practitioner of Department of Pediatrics at WVUH including Nurse practitioner Ms. Michelle Michael, were noted taking substance of abuse during work hours at WVUH. Faculty Dr. Melissa Larzo, M.D. and Dr. Heather Hixenbaugh, M.D., were also members of Resident evaluation and promotion committee of WVUH Pediatric Residency program. {Exhibit VVV}

90. Plaintiff multiple times reported to Pediatric Program at WVUH regarding these staff' and faculty's harassment and discrimination against Plaintiff, poor quality of residency training, mishandling of patient medications and taking substance of abuse during work hours. {Exhibit WWW}

91. On January 5, 2005, Plaintiff reported in a written complaint to Pediatric Program Director Dr. Martin E. Weisse at WVUH regarding Serious patient care neglects by faculties, harassment and discrimination against Plaintiff, poor quality of residency training; staff and faculty mishandling patient medications and taking substance of abuse during work hours. {Exhibit XXX}

92. Plaintiff was advised by Pediatric Residency program to join and fit well in this group of Faculty and staff who were mishandling patient medications and taking substance of abuse during work hours. However, Plaintiff opposed such unethical and unprofessional practices by those specific staff and faculties that could be detrimental to them, mankind and patient care.  Plaintiff, as a resident, in good faith also professionally suggested improvement strategies for the best interest of patient care and residency training. {Exhibit YYY}

93. Abusing substance of abuse could not only be extremely dangerous to the substance abusing staff and Faculties causing mental and health problems in them but also to their patients and environment. Plaintiff in good faith advised of getting frequent at random drug screening of all the staff and faculty of WVUH Pediatric Residency program, including of defendants, by atleast two different credible Out-of-state health care agencies for the best interest of patient care, resident education and learning environment. {Exhibit ZZZ}

94. Plaintiff completed his work conscientiously during his rotation in PACC in January 2005 and his competency was approved as evident from his patient notes where faculties agreed with his patient care and competencies. {Exhibit AAAA}

95. WVUH Pediatric Residency program did not conduct frequent at random drug screening of all the staff and faculty of WVUH Pediatric Residency program, including of defendants, by atleast two different credible Out-of-state health care agencies for the best interest of patient care, resident education and learning environment. {Exhibit BBBB}

96. With retaliatory motive, Faculties of continuity clinic did not give credit to Plaintiff for his rotation in Continuity clinic [PACC] in January 2005 despite Plaintiff's solid performance and made inappropriate baseless comments in total retaliation.

97. WVUH discriminated against Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, and created a hostile work environment or allowed a hostile work environment to exist, because of his age, gender, race, and national origin. {Exhibit CCCC}

98. WVUH retaliated against Plaintiff by failing to provide him residency training and with hospital benefits, hospital salary and educational fund as required by the ACGME requirements. {Exhibit DDDD}

99. WVUH retaliated against Plaintiff by unlawfully denying renewal of Plaintiff's agreement for completing his residency training with WVUH after he complained of the hostile work environment; advised WVUH of improper actions of the faculty and staff; complained of Serious patient care neglects by faculties, harassment and discrimination against Plaintiff, staff and faculty mishandling patient medications and taking substance of abuse during work hours, complained of the overall quality of the pediatric residency training program; and notified WVUH of its violation of ACGME's requirements, requirements that were promulgated for the safety and welfare of its pediatric patients. {Exhibit EEEE}

100.   A further act of retaliation on the part of AHS was its attempt to prevent Plaintiff from further residency training, employment and practice Medicine. {Exhibit FFFF}

101.   As a consequence of the above actions, Plaintiff has not only suffered irreparable interference with and damage to his career, but also serious emotional pain and suffering to his entire family.

## COUNT I
## TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE
### (Against all Defendants)

**102.** Plaintiff incorporates the allegations of Paragraphs 1 through 101 as if fully set forth herein.

103. The actions and/or omissions of Defendants WVUH, defendants and Weisse reasonably caused Plaintiff to not pursue opportunities with other pediatric residency programs.

104. As a proximate result of Defendants' actions and/or omissions, Plaintiff suffered damages.

> **WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:
> a)   compensatory damages;
> b)   punitive damages;
> c)   attorneys fees and costs of suit; and
> d)   such other relief as the Court deems just and equitable.

## Count II
## Defamation and Slander
### (Against All Defendants)

105. Plaintiff incorporates the allegations of Paragraphs 1 through 104 as if fully set forth herein.
106. The actions and/or omissions of Defendants, WVUH, Ferrari and Weisse reasonably caused Plaintiff to not pursue opportunities with other pediatric residency programs.

107. As a proximate result of Defendants' actions and/or omissions, Plaintiff suffered damages.

> **WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:
> a) compensatory damages;
> b) punitive damages;
> c) attorneys fees and costs of suit; and
> d) such other relief as the Court deems just and equitable.

## COUNT II
## Retaliation
### (Against All Defendants)

108. Plaintiff incorporates the allegations of Paragraphs 1 through 107 as if fully set forth herein.

109. Defendants are bound by the provisions of the law.

110. In retaliation for Plaintiff reporting Serious patient care neglects by facultes, harassment and discrimination against Plaintiff, staff and faculty mishandling patient medications and taking substance of abuse during work hours, complained of the overall quality of the pediatric residency training program; and notified WVUH of its violation of ACGME's requirements, requirements that were promulgated for the safety and welfare of its pediatric patients at WVUH to WVUH officials, Defendants

maintained a hostile work environment against the Plaintiff and unlawfully denied renewal of Plaintiff's agreement for completing his residency training with WVUH.

111. In retaliation for Plaintiff's complaints regarding staff and faculty mishandling patient medications and taking substance of abuse during work hours, Defendants maintained a hostile work environment against the Plaintiff and unlawfully denied renewal of Plaintiff's agreement for completing his residency training with WVUH.

WHEREFORE, Plaintiff demands judgment against Defendants for the following relief:

a) compensatory damages;
b) punitive damages;
c) attorneys fees and costs of suit; and
d) reinstatement to employment, back-pay, front-pay;
e) such other relief as the Court deems just and equitable.

## COUNT III
### Breach of Contract
### (Against WVUH)

**112.** Plaintiff incorporates the allegations of Paragraphs 1 through 111 as if fully set forth herein.

**113.** Plaintiff and Defendant WVUH entered into a valid and mutually binding employment contract.

**114.** Plaintiff performed and/or substantially complied with all his contractual obligations.

**115.** Defendant WVUH violated the contract by not providing due process and grievance procedure without any factual or legal basis, other contract provisions and providing substandard patient care and poor residency training.

**116.** As a proximate result of Defendant's actions and omissions, Plaintiff suffered, and continues to suffer, harm.

WHEREFORE, Plaintiff demands judgment against Defendants for the following relief:
a)   compensatory damages;
b)   punitive damages;
c)   reinstatement to employment, back-pay, front-pay;
d)   attorneys fees and costs of suit; and
e)   such other relief as the Court deems just and equitable.

## COUNT IV
### Promissory Estoppel
### (Against WVUH)

117. Plaintiff incorporates the allegations of Paragraphs 1 through 116 as if fully set forth herein.

118. Defendant WVUH promised to employ plaintiff and admit him to its pediatric residency program.

119. Based on WVUH' promise, Plaintiff reasonably declined other opportunities and relocated his family from India to West Virginia.

120. Plaintiff detrimentally relied on Defendant WVUH and suffered harm when WVUH denied renewal of Plaintiff's agreement for completing his residency training with WVUH and caused him to relocate his family.

> **WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:
> a)   compensatory damages;
> b)   punitive damages;
> c)   reinstatement to employment, back-pay, front-pay;
> d)   attorneys fees and costs of suit; and
> e)   such other relief as the Court deems just and equitable.

## COUNT V
### Violation of the Law Against Discrimination
### (Against All Defendants)

121. Plaintiff incorporates the allegations of Paragraphs 1 through 120 as if fully set forth herein.

122. Defendants are bound by the provisions of Law Against Discrimination.

123. As a result of his gender and national origin, and in violation of Law Against Discrimination, Defendants discriminated and retaliated against Plaintiff and subjected him to a hostile and discriminatory environment.

124. As a result of his national origin, Defendants discriminated and retaliated against the Plaintiff and unlawfully denied renewal of Plaintiff's agreement for completing his residency training with WVUH.

125. As a proximate result of Defendants' unlawful discrimination, Plaintiff has and continues to suffer harm.

> **WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:
> a)   compensatory damages;
> b)   punitive damages;
> c)   reinstatement to employment, back-pay, front-pay;
> d)   attorneys fees and costs of suit; and
> e)   such other relief as the Court deems just and equitable.

## COUNT VI
### Misrepresentation/Fraud
### (Against WVUH and Weisse)

126. Plaintiff incorporates the allegations of Paragraphs 1 through 125 as if fully set forth herein.

127. Defendants WVUH and Weisse promised to employ plaintiff and admit him to its pediatric residency program. At the time of the promise, Defendants WVUH and Weisse knew that the promise could not be fulfilled but communicated the promise to Plaintiff intending that he detrimentally rely on that promise.

128. Based on WVUH' and Weisse's promise, Plaintiff reasonably declined opportunities and relocated his family from India to West Virginia.

129. Plaintiff reasonably relied on Defendant WVUH and suffered harm when WVUH unlawfully denied

renewal of Plaintiff's agreement for completing his residency training with WVUH and caused him to

relocate his family.

   **WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:
   a)   compensatory damages;
   b)   punitive damages;
   c)   reinstatement to employment, back-pay, front-pay;
   **d)**   attorneys fees and costs of suit; and
   e)   such other relief as the Court deems just and equitable.

**COUNT VII**
**Negligent Representation**
**(Against** WVUH and Weisse)

130. Plaintiff incorporates the allegations of Paragraphs 1 through 129 as if fully set forth herein.

131. Defendants WVUH and Weisse promised to employ plaintiff and admit him to its pediatric

residency program.  At the time of the promise, Defendants WVUH and Weisse knew or should have

known that the promise could not be fulfilled but communicated the promise to Plaintiff intending that

he detrimentally rely on that promise.

132. Based on WVUH' and Weisse's promise, Plaintiff reasonably declined opportunities and relocated

his family from India to West Virginia.

133. Plaintiff reasonably relied on Defendant WVUH and suffered harm when WVUH unlawfully

denied renewal of Plaintiff's agreement for completing his residency training with WVUH and caused

him to relocate his family.

   **WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:
   a)   compensatory damages;
   b)   punitive damages;
   c)   reinstatement to employment, back-pay, front-pay;
   **d)**   attorneys fees and costs of suit; and
   e)   such other relief as the Court deems just and equitable.

**COUNT VIII**
**Intentional Infliction of Emotional Distress**

(Against WVUH and Martin Weisse, M.D., Norman Ferrari III, M.D., Mathew Brunner, M.D., Nancy Brunner,
M.D., Kathleen Perkins, M.D., Jennifer Pumphrey, M.D., Jean Someshwar, M.D., Melissa Larzo, M.D.,
Megan Troischt, M.D., Heather Hixenbaugh, M.D.,)

134. Plaintiff incorporates the allegations of Paragraphs 1 through 133 as if fully set forth herein.

135. Defendants WVUH and Martin Weisse, M.D., Norman Ferrari III, M.D., Mathew Brunner, M.D., Nancy

Brunner, M.D., Kathleen Perkins, M.D., Jennifer Pumphrey, M.D., Jean Someshwar, M.D., Melissa Larzo,

M.D., Megan Troischt, M.D., Heather Hixenbaugh, M.D., had a duty to Plaintiff to treat him with dignity and

respect.

136. The actions and/or omissions of Defendants were committed intentionally and were designed to cause

Plaintiff emotional distress.

137. As a proximate result of Defendants' actions and/or omissions, Plaintiff has suffered, and continues to

suffer, damages.

> **WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:
> a)  compensatory damages;
> b)  punitive damages;
> **c)**  attorneys fees and costs of suit; and
> **d)**  such other relief as the Court deems just and equitable.


### COUNT IX
### OUTRAGE
**(Against WVUH and Norman Ferrari III, M.D., Martin Weisse, M.D., Mathew Brunner, M.D., Nancy Brunner, M.D., Kathleen Perkins, M.D., Jennifer Pumphrey, M.D., Jean Someshwar, M.D., Melissa Larzo, M.D., Megan Troischt, M.D., Heather Hixenbaugh, M.D.)**
**138.** Plaintiff incorporates the allegations of Paragraphs 1 through 137 as if fully set forth herein.

139. Defendants WVUH and Norman Ferrari III, M.D., Martin Weisse, M.D., Mathew Brunner, M.D.,

Nancy Brunner, M.D., Kathleen Perkins, M.D., Jennifer Pumphrey, M.D., Jean Someshwar, M.D., Melissa

Larzo, M.D., Megan Troischt, M.D., Heather Hixenbaugh, M.D. engaged in extreme and outrageous conduct

directed toward the Plaintiff.

140. As a proximate result, of Defendants WVUH and Norman Ferrari III, M.D., Martin Weisse, M.D.,

Mathew Brunner, M.D., Nancy Brunner, M.D., Kathleen Perkins, M.D., Jennifer Pumphrey, M.D., Jean

Someshwar, M.D., Melissa Larzo, M.D., Megan Troischt, M.D., Heather Hixenbaugh, M.D.'s extreme and

outrageous conduct, Plaintiff has suffered, and continues to suffer, harm.

> **WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:
> a)  compensatory damages;
> b)  punitive damages;
> c)  such other relief as the Court deems just and equitable.


### COUNT X
### Respondeat Superior
**(Against WVUH, Bruce McClymonds, President and CEO, Norman Ferrari III, M.D., Martin Weisse, M.D.,)**
**141.** Plaintiff incorporates the allegations of Paragraphs 1 through 140 as if fully set forth herein.

142. Defendants Bruce McClymonds, President and CEO, Norman Ferrari III, M.D., Martin Weisse, M.D.

had supervisory authority over Mathew Brunner, M.D., Nancy Brunner, M.D., Kathleen Perkins, M.D.,

Jennifer Pumphrey, M.D., Jean Someshwar, M.D., Melissa Larzo, M.D., Megan Troischt, M.D., Heather

Hixenbaugh, M.D and other employees and should have acted to prevent the actions taken against Plaintiff.

143. Defendants Bruce McClymonds, President and CEO, and Norman Ferrari III, M.D., knew or should have known that Mathew Brunner, M.D., Martin Weisse, M.D.,  Nancy Brunner, M.D., Kathleen Perkins, M.D., Jennifer Pumphrey, M.D., Jean Someshwar, M.D., Melissa Larzo, M.D., Megan Troischt, M.D., Heather Hixenbaugh, M.D and/or other employees were acting against Plaintiff in the fashion described herein.

144. As a proximate result of Defendants' actions and/or omissions, Plaintiff had suffered, and continues to suffer, damages.

> **WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:
> a)   compensatory damages;
> **b)**   punitive damages;
> c)   such other relief as the Court deems just and equitable.

### COUNT XI
### Loss of Consortium
### (Against All Defendants)

145. Plaintiff incorporates the allegations of Paragraphs 1 through 144 as if fully set forth herein.

146. Plaintiff's ability to obtain a placement in another residency program has been significantly impaired because of the Defendant's wrongful conduct.

147. As a proximate result, Plaintiff's relationship with his wife has been adversely impacted.

148. Plaintiff's wife has informed him that the current professional situation is unacceptable and that she will leave him and take their children away.

149. As such, Plaintiff has been deprived of the love and affection customarily expected of a spouse because of the wrongful conduct of the Defendants.  Moreover, he has been deprived of the love, affection and company of his children.

> **WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:
> a)   compensatory damages;
> b)   punitive damages;
> c)   reinstatement to employment, back-pay, front-pay;
> **d)**   attorneys fees and costs of suit; and
> e)   such other relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

### DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates himself, as trial counsel.

## CERTIFICATION

Pursuant to law, it is hereby certified that the matter in controversy is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of our knowledge and belief.

By: _____

DHIRAJ CHHAPARWAL, M.D.

DATED: June 29, 2007